# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH SNOW,                ) | |
|               ) | |
|      Plaintiff,     ) | |
|               ) | |
| v.                    ) | **COMPLAINT** |
|               ) | |
| EXPERIAN INFORMATION   ) | **Jury Demand Endorsed Herein** |
| SOLUTIONS, INC., and      ) | |
| TRANS UNION, LLC,        ) | |
|               ) | |
|               ) | |
|      Defendants.    ) | |

COMES NOW Plaintiff, Kenneth Snow, by and through undersigned counsel, and for his Complaint against the Defendants, Experian Information Solutions, Inc., Trans Union, LLC, he states and avers as follows:

## INTRODUCTION

1.    This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2.    Kenneth Snow ("Plaintiff") is a natural person that resides in Wichita, Kansas.

3.    Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4.    Experian Information Solutions, Inc. ("Experian") is a domestic corporation that regularly transacts business in Kansas through its registered agent, C T Corporation System, 112 SW 7th Street,

Suite 3C, Topeka, KS 66603.

5.     Experian is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6.     Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Kansas through its registered agent, The Prentice-Hall Corporation System, Kansas, Inc., 1100 SW Wanamaker Rd, Suite 103, Topeka, KS 66604.

7.     Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

9.     Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

10.     In April 2019, Plaintiff made the difficult decision to file for bankruptcy.

11.     After successfully navigating all requirements imposed by the bankruptcy court, Plaintiff completed his bankruptcy caser and received a discharge from the court in July 2019.

12.     Finally able to begin rebuilding his finances, Plaintiff opened a consumer credit card account with Meritrust Credit Union in March 2022.

13.     Plaintiff used the account and made all payments on time.

14.     In January 2023, Plaintiff decided he was ready to purchase a home for his family and applied for mortgage financing.

15.     However, after a credit check was performed, his application for financing was denied.

16.     Upon reviewing his credit reports with his lender, they identified the Meritrust credit card account as a key derogatory item that was anchoring down his score.

17.     The key issue was that the Meritrust credit card account was reporting as though the account balance was discharged through bankruptcy.

18.     This inaccurate reporting eliminated the positive impact of this new account and misrepresented Plaintiff's on-time payment history.

19.     Assuming this was an accidental oversight by Meritrust Plaintiff first contacted them directly.

20.     They advised that credit reporting issues would need to be addressed through the consumer reporting agencies.

21.     On or about January 9, 2023, Plaintiff contacted each of the major consumer reporting agencies, Equifax, Experian and Trans Union ("the CRAs") by letter and requested each investigate and correct the inaccurate Meritrust account.

22.     Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, the CRAs were then required to reasonably investigate Plaintiff's disputes, as well as forward copies of Plaintiff's dispute letters to Meritrust.

23.     Equifax responded in February 2023 and deleted the Meritrust account from Plaintiff's credit file.

24.     However, after approximately 45 days, Plaintiff still had not received any response from Experian or Trans Union.

25.     On or about March 22, 2023, Plaintiff obtained another copy of his credit reports and confirmed that the account was still showing a derogatory status with bankruptcy remarks and did not reflect any indication that the account had been updated.

26. In fact, the credit reports did not reflect any indication that Experian or Trans Union had even investigated Plaintiff's disputes – no comments or other notes on the Meritrust account reflecting the account as "disputed" or in a dispute status.

27. Plaintiff was beyond angry. Why were Experian and Trans Union allowing this to happen? Why were they not responding?

28. Wanting to stay vigilant about making sure this negative information was removed from her credit history, Plaintiff sent another letter to Trans Union and Experian on April 14, 2023, again disputing the inaccurate information listed on the Meritrust account.

29. Confusingly, again Plaintiff did not receive any response from Experian or Trans Union.

30. Again, Plaintiff waited diligently until the time for responses had elapsed and then, after receiving nothing, obtained another copy of his credit report.

31. Predictably, nothing on his reports was corrected or notated as disputed.

32. Plaintiff has yet to receive any correspondence regarding any of his disputes from either of the CRAs.

33. After contacting the CRAs repeatedly to fix this issue to no avail, Plaintiff is at a loss as to how to follow, let alone combat, the CRAs' logic in allowing this evidently inaccurate credit information to remain on his credit reports.

34. The CRAs have complete control over the credit picture they paint of Plaintiff, yet they refuse to correct an objectively false error. Plaintiff feels helpless and hopeless as to what else he can do.

35. Plaintiff fears that he will not be able to obtain an accurate credit report, and so, will continue to be denied his chance to buy a new home, or take advantage of any of countless other credit opportunities he should otherwise be eligible for. This has imposed upon Plaintiff great sadness and frustration, as well as anger and disgust.

36.     Plaintiff has lost all trust in the credit reporting system and believes that litigation is his only option to fix his credit reports.

## FIRST CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681*i* and e(b) by Experian

37.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

38.     A "consumer reporting agency" is defined by the FCRA as follows:

39.     [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  15 U.S.C. § 1681a(f).

40.     Experian is a "consumer reporting agency" as defined by the FCRA.

41.     Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act.  *See* 15 U.S.C. § 1681n(a).

42.     Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

43.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681*i*(a)(1).  The Act imposes a 30-day time limitation for the completing of such an investigation.  *Id.*

44.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed

information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681*i*(a)(5)(A).

## **Experian's Reasonable Reinvestigation Violations**

45.     By letters dated February 9, 2023, and April 14, 2023, Plaintiff disputed the false information listed on one Meritrust credit card account appearing on his Experian credit report.

46.     Plaintiff specifically advised Experian that a mistake had been made, provided all necessary information to Experian to support same, and requested the trade line be deleted or updated accordingly.

47.     Either Experian conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

48.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

49.     As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

50.     As a direct and proximate result of Experian's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

51.     Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

52.     Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Experian's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

53.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

54.     On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

55.     Despite actual and implied knowledge that the Meritrust account contained inaccurate information, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

56.     On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

57.     Through Plaintiff's communications with Experian, Experian knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Experian took no measure to stop painting a false and damaging picture about Plaintiff.

58.     Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Experian's pockets.

59.     As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

60.     Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

61.     Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Experian, and for the following relief:

(a)    Actual damages sustained;

(b)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c)    Punitive damages in an amount to be determined by the jury;

(d)    Reasonable attorneys' fees and costs; and

(e)    Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union

62.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### Trans Union's Reasonable Reinvestigation Violations

63.    By letters dated February 9, 2023, and April 14, 2023, Plaintiff disputed the false information listed on one Meritrust account appearing on his Trans Union credit report.

64.    Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade line be deleted or updated accordingly.

65.    Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

66.    By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

67.    As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's

disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

68.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

69.     Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

70.     Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681n.

## Trans Union's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

71.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

72.     On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

73.     Despite actual and implied knowledge that the Meritrust account contained inaccurate information, Trans Union readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Trans Union reported.

74.     On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

75.     Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff.  Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

76.     Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

77.     As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

78.     Upon information and belief, Trans Union has exhibited a pattern of refusing to follow

reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

79.    Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.  The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in his favor and against Trans Union, and for the following relief:

(f)    Actual damages sustained;

(g)    Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h)    Punitive damages in an amount to be determined by the jury;

(i)    Reasonable attorneys' fees and costs; and

(j)    Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Respectfully submitted,

**/s/    Andrew M. Esselman**
Andrew M. Esselman #26113
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 140
Lee's Summit, MO 64064
Telephone: 816-246-7800
Facsimile: 855-523-6884
Email:  andrewe@creditlawcenter.com

Counsel for Plaintiff